UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MIROSLAV ZAVADIL,   :
                    :                       **MEMORANDUM & ORDER**
            Plaintiff, :
                    :                       08-CV-4231 (DLI)
        -against-   :
                    :
MICHAEL J. ASTRUE,  :
Commissioner of Social Security, :
                    :
            Defendant. :
-------------------------------------------------------x
**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Miroslav Zavadil filed an application for disability insurance benefits under the Social Security Act ("Act") in January 1982, claiming disability since December 11, 1981 because of heart problems, chest pains and hypertension. (Tr. 108.) His application was denied initially and upon reconsideration. (Tr. 108.)

In March 1993, the Commissioner of the Social Security Administration ("Commissioner") advised Plaintiff that he could request review of its decision with respect to the period of alleged disability affected by *Stieberger v. Sullivan*, 792 F. Supp. 1376 (S.D.N.Y. 1992), *as modified*, 801 F. Supp. 1079 (S.D.N.Y. 1992) (the "*Stieberger* period").[1] In May 2000, the Commissioner advised Plaintiff that he could also request review of the period of alleged disability affected by *New York v. Sullivan*, 906 F.2d 910 (2d Cir. 1990) (the "*SONY* period").[2]

---

[1] (Tr. 20–22.) This federal class action allowed for review of a claim from any claimant who: (1) had a disability denied or terminated between October 1, 1981 and July 2, 1992 on the ground that he was not disabled; (2) was a New York State resident at the time of the denial or termination; and (3) had a disability claim denied or terminated at any level of review between October 1, 1981 and October 17, 1985, or at the ALJ or Appeals Council level between October 19, 1985 and July 2, 1992.

[2] (Tr. 23–27.) This federal class action allowed for review of a claim from any claimant: (1) whose Title II or Title XVI disability was denied or ceased at any level on or after June 1, 1980;

1

Plaintiff requested review of both periods, and in September 2000, the Commissioner affirmed its original decision to deny him disability benefits. (Tr. 28–31.)

Plaintiff requested a hearing (Tr. 32), which was held on August 21, 2001 before an administrative law judge ("ALJ"). (Tr. 108.) In a decision dated November 29, 2001, the ALJ found Plaintiff not disabled during either of the two periods of review. (Tr. 108–11.) Plaintiff requested further review (Tr. 114–17), and the Appeals Council subsequently remanded his case for further proceedings before the ALJ. (Tr. 119–22.) Specifically, the Appeals Council ordered the ALJ to: (1) consider both periods subject to readjudication; (2) obtain evidence from a medical expert to clarify the nature and severity of the alleged impairments; (3) obtain additional evidence from Elmhurst Hospital, Gary Zabarsky, M.D., and Jiri Bodany, M.D. concerning the impairments, in order to complete the administrative record; (4) further evaluate Plaintiff's subjective complaints; and (5) give further consideration to Plaintiff's maximum Residual Functional Capacity ("RFC") and provide appropriate rationale and evidence in support of the assessed limitations. (Tr. 121–22.)

Pursuant to this remand order, the ALJ held a second hearing on November 14, 2005. (Tr. 437.) In a decision dated May 24, 2006, the ALJ again held that Plaintiff was not disabled during either period. (Tr. 8–18.) The Appeals Council declined to review the ALJ's second decision on August 22, 2008, and the determination that Plaintiff was not disabled during either of the relevant periods thus became the final decision of the Commissioner. (Tr. 3–6.)

On October 17, 2008, Plaintiff brought the instant action challenging the Commissioner's decision. (Compl. 1.) On May 6, 2009, Plaintiff moved for judgment on the pleadings pursuant to

---

(2) who had heart disease, hypertensive vascular disease; (3) whose denial or cessation was based on an evaluation of results of a treadmill or other exercise test; and (4) who resided in the State of New York at the time of the Commissioner's final decision.

FED. R. CIV. P. 12(c), requesting "that the decision of the Commissioner be reversed and remanded solely for the calculation of benefits." (Docket No. 8 ("Pl.'s Mem.") at 18.) On May 12, 2009, the Commissioner cross-moved for judgment on the pleadings, seeking affirmation of his final decision that Plaintiff was not entitled to disability benefits. (*See generally* Docket Entry No. 10 ("Def.'s Mem.").) For the reasons stated below, both motions are denied, and the case is remanded to the Commissioner for further proceedings.

I.   BACKGROUND

Plaintiff, who was born on May 21, 1925, was fifty-six years old at the time of the alleged disability onset. (Tr. 28.) He completed the equivalent of a high school education in what was then Czechoslovakia. (Tr. 52.) After moving to the United States, he worked as an aircraft mechanic from 1961 to 1981.[3] (Tr. 41.) Plaintiff's duties included changing tires, brakes and generators, which required him to walk, stand, and climb for eight hours. (Tr. 47, 443–44.) He testified that he frequently lifted equipment that weighed fifty pounds, occasionally lifted equipment that weighed over one hundred pounds, and sometimes lifted up to three hundred pounds with the help of another worker. (Tr. 47, 443.)

The first reference in the record to Plaintiff's alleged disability was when he visited the emergency room at Elmhurst Hospital on January 23, 1981 complaining of chest pain and palpitations. (Tr. 130.) At that time, he was not taking any medications and his blood pressure was 170/130. (*Id.*) He was diagnosed with angina pectoris and referred to the hospital's cardiology clinic. (*Id.*)

---

[3] Plaintiff claims that, because he was never officially licensed as an aircraft mechanic, his job was actually "close[er] to [that of] a mechanic's *assistant*, doing the very heavy lifting . . . ." (Pl.'s Mem. 14 (emphasis added).)

3

On February 12, 1982, Dr. J. Schifferdecker completed a "Notice and Proof of Claim for Disability Benefits." (Tr. 90.) He reported that Plaintiff was hospitalized for chest pain and blurred vision at Physician's Hospital from December 11, 1981 through December 17, 1981, and his last date of treatment was on February 12, 1981. (*Id.*) Dr. Schifferdecker noted that Plaintiff's blood pressure was 190/120, with high pressure in the left eye. (*Id.*) His diagnosis was severe hypertension and glaucoma in the left eye. (*Id.*) He indicated that Plaintiff was "unable to work because of this disability" from December 11, 1981 until March 15, 1981. (*Id.*)

Dr. Karel Steinbach completed an insurance form for Plaintiff's employer regarding his hospital stay at Physician's Hospital on February 13, 1982. (Tr. 86.) The form indicated Plaintiff was diagnosed with rheumatic heart disease[4] and infarction.[5] (*Id.*) The form also noted December 10, 1981 as the date of Plaintiff's total disability. (*Id.*) Dr. Steinbach saw Plaintiff for a follow-up examination on January 9, 1982. (*Id.*)

On August 9, 1982, Plaintiff visited the diagnostic clinic at Elmhurst Hospital. (Tr. 140.) His blood pressure was 140/90. (*Id.*) He was diagnosed with hypertension, arteriosclerotic heart disease,[6] and dizziness of unknown etiology. (Tr. 86, 141.) He was referred to the hospital's cardiac clinic for a stress test. (*Id.*) At the cardiac clinic, on August 31, 1982, Plaintiff complained of dizziness, chest pain and palpitations not related to exercise. (Tr. 144.) He felt tired and weak, and was told to undergo testing and follow-up in one month. (Tr. 145.)

---

[4] This disease results when rheumatic fever damages the heart valves. Susan Sommers, *Heart Disease*, *in* 7 ATTORNEY'S TEXTBOOK OF MEDICINE 30–88 (Louise J. Gordy & Roscoe N. Gray eds., 2009) [hereinafter TEXTBOOK OF MEDICINE].

[5] A sudden insufficiency of blood supply due to mechanical factors or pressure. STEDMAN at 894.

[6] (*Id.*) A hardening of the arteries. STEDMAN at 134.

Plaintiff returned to the cardiac clinic on September 29, 1982. (Tr. 150.) An echocardiogram (EKG) revealed no evidence of mitral stenosis.[7] Additionally, a stress test performed that day was terminated after five minutes due to elevated and hypertensive blood pressure, and was considered incomplete, non-diagnostic, and suboptimal. (*Id.*) The next day, Plaintiff again visited the cardiac clinic, complaining of dizziness and chest pain over the left pericardial area that precipitated during rest and exertion. (*Id.*) He was diagnosed with atypical chest pain. (Tr. 145.)

On November 23, 1982, Plaintiff returned to the cardiac clinic complaining of chest pain. (Tr. 146–47.) He was diagnosed with atypical chest pain, dizziness and elevated blood pressure. (Tr. 147.) X-rays showed no definite lung infiltrates, a normal heart contour, and a tortuous and partially calcified thoracic aorta. (Tr. 149). Furthermore, a 24-hour continuous EKG performed on December 28, 1982 revealed that his heart beat had one isolated premature ventricular contraction. (Tr. 156.) No changes were noted in Plaintiff's condition during a follow-up at the cardiac clinic on January 18, 1983. (Tr. 147.)

Plaintiff next visited the cardiac clinic for follow-up on April 19, 1983. (Tr. 154.) He complained of chest pain at rest, which was not always alleviated with nitroglycerine. (*Id.*) The clinic diagnosed him with atypical chest pain, but ruled out coronary artery disease and scheduled him for a new EKG and stress test. (*Id.*) However, Plaintiff missed his appointment for these tests. (Tr. 157.)

On July 26, 1983, Plaintiff was seen for continued chest pain, and was again diagnosed with hypertension and angina pectoris. (Tr. 157.) He was advised to undergo a cardiac catheterization, but he declined. (*Id.*) Plaintiff's lungs were clear, his heart had a regular beat

---

[7] A narrowing of the orifice of the mitral heart valve. STEDMAN at 1695.

with no murmur, and he had no edema in his extremities. (*Id.*) Plaintiff visited the emergency room complaining of chest pain on August 15, 1983, where he was treated with Nitropaste and discharged. (Tr. 159–62.) No changes were noted at his September 6, 1983 follow-up exam. (Tr. 158.)

On October 5, 1983, Plaintiff was admitted to Elmhurst Hospital for elective cardiac catheterization. (Tr. 77.) He was treated post-operatively through October 7, 1983, and discharged with diagnoses of mild, non-obstructive coronary artery disease.[8] On October 13, 1983, Plaintiff was seen for a follow-up exam at which his coronary arteries were found to be normal, although he was diagnosed with hypertension. (Tr. 196.)

On July 3, 1985, Dr. Straznocky completed a form entitled "Attending Physician's Statement of Disability." (Tr. 88.) The form noted that Plaintiff's "date of last examination" was July 3, 1985 and diagnosed him with hypertension and angina pectoris. (*Id.*) The form stated that Plaintiff was "now totally disabled" and could not do any other work. (*Id.*) Dr. Straznocky also indicated that he did not "expect a fundamental or marked change in the future." (*Id.*)

Plaintiff testified before the ALJ that he had had a heart attack in the Czech Republic in 1989. (Tr. 460.) He claimed that, as a result of this incident, he had been hospitalized for ten days and sent to a rehabilitation center for two months. (Tr. 461.) However, the Czech hospital records indicated that Plaintiff's heart attack occurred in 1993 (Tr. 418), a date corroborated by the final report from the Elmhurst diagnostic clinic in November 1996. (Tr. 84.)

---

[8] (Tr. 74.) This disease is characterized by a progressive narrowing of the coronary artery channels that eventually results in an imbalance between the demand of the heart muscle for oxygen and the supply of oxygen reaching the muscle. TEXTBOOK OF MEDICINE 30–47.

## II. DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 1383(c)(3). A district court reviewing the final determination of the Commissioner must determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa*, 168 F.3d at 83

(2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

B.     The ALJ's Decision

In order to receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), 423(d). ALJs must adhere to a five-step inquiry in determining whether a claimant is disabled. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment" without reference to age, education, or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1 of 20 C.F.R. pt. 404, subpt. P. *See* 20 C.F.R.§ 404.1520(d). If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's RFC in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." *Id*. Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f).

Here, the ALJ applied the five-step analysis as set forth in 20 C.F.R. § 404.1520. He first resolved step one in Plaintiff's favor, finding that Plaintiff did not perform substantial gainful activity after the onset of his alleged disability. (Tr. 13.) At step two, the ALJ found that Plaintiff had a severe combination of impairments, to wit: diabetes, hypertension, atypical chest pain, and mild non-obstructive coronary artery disease. (*Id*.) At step three, the ALJ found that Plaintiff had

no impairment meeting the criteria of any of the listed impairments described in Appendix 1 of 20 C.F.R. § 404.1520(d), with particular attention given to the cardiovascular listing. (*Id*.) The ALJ next analyzed Plaintiff's RFC pursuant to step four, and found that Plaintiff remained capable of performing "a full range of medium work." (Tr. 14.) In conducting this analysis, the ALJ found the medical evidence to be inconsistent with the treating physicians' reports, and also found Plaintiff's testimony "not entirely credible." (Tr. 15.) Because the ALJ concluded that Plaintiff retained the RFC to return to his past work as an airplane mechanic, he found that Plaintiff was accordingly "not disabled within the meaning of the [Act] during either of the two relevant periods under review." (Tr. 16–17.)

### C. Failure to Fully Comply with Appeals Council Remand Directives

An "ALJ's failure to comply with [an] Appeals Council's order constitutes legal error, and necessitates a remand." *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009); *see also* 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council . . . ."). As previously noted, the Appeals Council gave the ALJ five specific directives in its original remand order. (*See* Tr. 121–22.) The ALJ complied with the directive to consider both periods subject to readjudication, and the directive to give further consideration to Plaintiff's RFC. It also appears that the ALJ made reasonable efforts to comply with the directive to obtain additional evidence from Elmhurst Hospital and Drs. Zabarsky and Bodany. (*See* Tr. 439–40.)

However, the ALJ did not comply with the directive to obtain evidence from a medical expert. (Tr. 121–22.) Although Dr. Theodore Cohen, a board-certified internist, was present at the second hearing as "an impartial medical expert" (Tr. 11–12), he inexplicably was not called to testify. (*See generally* Tr. 439–66.) Dr. Cohen does not appear to have issued any evaluations

9

or reports of his own, and the ALJ did not cite to any in his decision. (*See generally* Tr. 11–18.) Furthermore, Defendant does not reference Dr. Cohen in its motion papers. (*See generally* Def.'s Mem.) This lapse necessitates remand. *See* 20 C.F.R. § 404.977(b); *Scott*, 592 F. Supp. 2d at 371.

The ALJ also failed to comply with the Appeals Council's directive to "further evaluate [Plaintiff]'s subjective complaints." (Tr. 122.) The only testimony the ALJ solicited from Plaintiff at the remand hearing concerned his duties as an airplane mechanic. The ALJ did not question Plaintiff at all regarding his symptoms during the periods under review.[9] (*See* Tr. 443–46.) Such a lapse likewise necessitates remand. *See* 20 C.F.R. § 404.977(b); *Scott*, 592 F. Supp. 2d at 371.

Remand is further warranted by the ALJ's refusal to consider any medical records dated outside the two periods of readjudication. (*See, e.g.*, Tr. 441, 458, 463.) This refusal ignored the possibility that these records related back to the relevant periods and, thus, could assist with the disability determination. This refusal is especially egregious in light of the "non-adversarial" nature of the proceeding at bar, which imposes on an ALJ the "affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Tavarez v. Barnhart*, 124 F. App'x 48, 49 (2d Cir. 2005) (duty to develop record exists "regardless of whether the claimant is proceeding *pro se* or is represented by counsel").

Finally, the court notes with disapproval the Appeals Council's failure to ensure that its own directives were followed. Instead of reviewing the remand hearing transcript, the Appeals Council simply issued a standard form letter to Plaintiff denying his request for review. (*See* Tr.

---

[9] Although the ALJ may have taken testimony of this nature at the first hearing on August 21, 2001, the transcript of that hearing was not included in the instant administrative record. Therefore, the court was unable to review it.

3 ("We found no reason under our rules to review the Administrative Law Judge's decision.").) A more thorough follow-up may well have precluded the need for the instant action.

### D. The Court's Remand Directives

On remand, given the unavailability of Plaintiff's original treating physicians, the ALJ must comply with the Appeals Council's earlier directive and incorporate input from a medical expert into his disability determination. The ALJ must also comply with the earlier directive to evaluate Plaintiff's subjective complaints, via either additional testimony or reference to testimony from the first hearing.

Additionally, although the ALJ need not give controlling weight to the opinions of Drs. Schifferdecker, Steinbach, and Straznocky in making his disability determination, he must, in such a case, "give good reasons. . . for the weight [he does] give[] [them] . . . ." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Clark v. Comm'r of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Specifically, the ALJ must consider: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship[s]; (ii) the evidence in support of the opinion[s]; (iii) the opinion[s]' consistency with the record as a whole; and (iv) whether the opinion[s] [were] from specialist[s]." *Clark*, 143 F.3d at 118 (citations omitted).

With respect to the determination of whether Plaintiff was capable of performing past relevant work during the relevant periods, if the ALJ chooses to not credit Plaintiff's testimony on this matter, he must provide "specific reasons for the finding . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see also Paduani v. Commissioner*, 2010 WL 1816262, at *3 (E.D.N.Y. May 5, 2010). Regarding credibility in general, the court notes the inconsistency

between Plaintiff's testimony that his heart attack in the Czech Republic occurred in 1989, and the records indicating that it occurred in 1993. On remand, the ALJ should probe this inconsistency to determine if it was in fact merely a "mischaracterization of the medical record." (Pl.'s Mem. 16.)

The ALJ need *not* revisit the question of whether Plaintiff's former job should be classified as heavy, as opposed to medium work, as Plaintiff's argument in this regard is unpersuasive. The record clearly indicates that Plaintiff was an "aircraft mechanic" (*see* Tr. 442), and the ALJ properly relied on the relevant duty description provided in the Department of Labor's Dictionary of Occupational Titles. *See* 20 C.F.R. § 404.1566(d)(1). Furthermore, Plaintiff's own testimony regarding his duties in this job aligns with the Department of Labor's description. (*Compare* Tr. 443 (describing past work as "changing tire[s], changing brakes, changing [] generators") *with* U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES NO. 621.281-014 (1991) (describing typical duties of an aircraft mechanic).) Finally, Plaintiff cannot satisfy the "worn-out worker rule," 20 C.F.R. § 404.1562(a), as he did not work as an airplane mechanic (or mechanic's assistant) for the statutory requirement of thirty-five years. (*See* Tr. 85.)

## III. CONCLUSION

For the reasons set forth above, defendant Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted to the extent that this case is remanded to the Commissioner for further evidentiary proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Commissioner is directed to prevent further delay in the processing of Plaintiff's case and to expedite the additional administrative proceedings. If Plaintiff's benefits remain denied, the Commissioner is directed to render a final decision within sixty (60) days of Plaintiff's appeal, if any. *See Butts v. Barnhart*, 388 F.3d 377, 388 (2d Cir. 2004) (suggesting procedural time limits to ensure speedy disposition of Social Security cases upon remand by district courts).

SO ORDERED.

DATED: Brooklyn, New York
September 29, 2010

/s/
DORA L. IRIZARRY
United States District Judge